1  Arthur A. Hartinger (SBN 121521)
   ahartinger@meyersnave.com
2  Edward L. Kreisberg (SBN 179528)
   ekreisberg@meyersnave.com
3  Justine Hinderliter (SBN 245410)
   jhinderliter@meyersnave.com
4  MEYERS, NAVE, RIBACK, SILVER & WILSON
   555 12th Street, Suite 1500
5  Oakland, California 94607
   Telephone: (510) 808-2000
6  Facsimile: (510) 444-1108

7  Benjamin P. De Mayo (SBN 65618)
   County Counsel
8  Teri L. Maksoudian (SBN 167848)
   Deputy County Counsel
9  Teri.Maksoudian@coco.ocgov.com
   County of Orange
10 333 W. Santa Ana Blvd., 4th Floor
   Santa Ana, CA 92701
11 Telephone: 714-834-4379
   Facsimile: 714-834-2359

12
   Attorneys for Defendant
13 County of Orange

14              UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16                   SOUTHERN DIVISION

17

18 RETIRED EMPLOYEES                CASE NO. SACV-07-1301 AG (MLgX)
   ASSOCIATION OF ORANGE
19 COUNTY, INC.,                    **DEFENDANT'S REPLY BRIEF AND
                                    DECLARATION IN SUPPORT OF
20           Plaintiff,             MOTION TO AMEND THE
                                    SCHEDULING ORDER**
21     v.
                                    Date: July 14, 2008
22 COUNTY OF ORANGE,                Time: 10:00 a.m.
                                    Judge: Andrew J. Guilford
23           Defendant.

24

25       I, Arthur A. Hartinger, declare:

26                      **INTRODUCTION**

27       1.    I am lead counsel for the County of Orange ("the County") in this litigation.

28 I write in support of the County's motion to amend the scheduling order.

1    2.    This case seeks to overturn the County's action to mitigate a reported $1.4

2    billion accrued liability, which jeopardized the future of the County's entire retiree medical

3    program.  I am informed that post employment medical benefits affecting approximately

4    10,000 retirees are implicated.  Further, plaintiff's request in this lawsuit could negatively

5    impact thousands of active employees whose unions reached labor deals contrary to what

6    REAOC seeks here.

### SUMMARY OF COUNTY'S REQUEST

8    3.    The County seeks a 6-9 month continuance of dates in the Scheduling Order.

9    Contrary to REAOC's opposition, there is good cause for the County's motion, based on

10   two categories:  (a) the need to assemble a comprehensive record, which cannot reasonably

11   be accomplished by the dates set in the Scheduling Order, despite the County's diligence;

12   and (b)  the County is filing its motion for class certification, in order to achieve a binding

13   and fair outcome on all parties, and to avoid inconsistent adjudications in other courts.  On

14   June 24, 2008, the County notified plaintiff's counsel that the motion for class certification

15   would be set for hearing on August 4, 2008.

16   4.    The County respectfully requests that the Court:  (a)  amend the dates in the

17   Scheduling Order; (b) order the parties to meet and confer on an agreed upon record for

18   summary judgment; and (c)  schedule a mutually convenient date for hearing cross

19   motions for summary judgment.

### PREPARATION OF THE EVIDENTIARY RECORD AND FURTHER DISCOVERY

22   5.    Both parties have indicated that this case will likely be subject to review in

23   the Ninth Circuit.  A comprehensive record is critical to trial court and appellate review.

24   Unless the County's motion is granted, it is likely that the record will be incomplete or

25   inaccurate at the time that the parties file summary judgment motions, as well as by the

26   time of trial.

27   6.    Plaintiff's Complaint relies on the existence of a binding contract or promise

28   to support the claim made here:  that the County must continue to subsidize retiree health

Defendant's Reply Brief and Declaration in Support
of Motion to Amend the Scheduling Order                           Case No. SACV-07-1301 AG

1   rates by "pooling" the retiree and active populations.

2        7.    The County acknowledges that REAOC pleaded implied contract claims in

3   its complaint.   However, the implied contract theory is premised, as the County has

4   learned only through discovery, on nearly a quarter century of Board legislation adopting

5   labor contracts, health plan rates, and personnel salary resolutions.

6        8.    In addition, plaintiff has since identified certain oral statements made over

7   this same period (nearly a quarter century, from 1985 - 2007). These oral statements were

8   first identified by plaintiff in May 2008.

9        9.    Plaintiff's discovery responses were evasive in response to the County's

10   request that the plaintiff identify the source of the "contract" at issue in this case.  In

11   response to the County's interrogatories, on April 14, 2008, plaintiff first explained that its

12   "contract" and "promissory estoppel" causes of action were premised on "numerous

13   contracts between the County and its employees and retirees, from the 1985 through

14   2007...." Plaintiff referenced, but did not specifically identify, numerous legislative

15   actions by the Board of Supervisors during this period, including:  memoranda of

16   understanding between the County and its labor organizations; personnel salary

17   resolutions; summaries of benefits. Plaintiff stated:  *"Plaintiff cannot reasonably be*

18   *required to "identify and specify the terms" of all of these contracts, because they*

19   *comprise thousands of pages and cover a period of more than two decades."* (Plaintiff's

20   Responses to Defendant's Interrogatories, Set One, dated April 14, 2008, a true and correct

21   copy of which is attached as Exhibit A.)  Despite the County's continued meet and confer

22   efforts to identify the contracts or promises, Plaintiff has not provided the requested

23   information to date.

24       10.    The County seeks to compile a comprehensive record of the Board

25   legislation comprising the documents specified by plaintiff as the basis for its claim.

26   Currently, there are gaps in the record. Many of the legislative files must be gathered by

27   hand, and retrieved in hard copy.  This has been a time consuming process, and I believe

28   the County has cumulatively spent hundreds of hours on this task, but the record is not yet

3

1  complete.

2      11.    After receiving REAOC's interrogatory answers, the County has met and
3  conferred on numerous occasions in order to obtain complete information. In May 2008,
4  REAOC served supplemental responses to the County's interrogatories. The Supplemental
5  Responses first identified oral communications as part of REAOC's case.

6      The supplemental responses identified a retiree, residing in Arizona, who was
7  present at a meeting "in or about 1990." Plaintiff claimed that "a number of other soon-to-
8  be retirees" were present at this meeting, however, plaintiff has not yet identified the other
9  witnesses. Thus, REAOC initially identified oral statements as supporting its case less than
10 two months ago, on May 16, 2008, and has not yet identified the relevant witnesses.
11 Additionally, during the week of June 30, 2008, REAOC deponents have identified
12 additional alleged oral statements relating to their claims. The County is working to
13 identify the possible witnesses to all of these statements, which were alleged to occur over
14 the past twenty years.

15     12.    Many of the persons who have "knowledge" of the case are retired.
16 REAOC's attorneys purport to represent many if not most of the persons they identify as
17 having knowledge of their claims, thus precluding informal contact, and necessitating
18 depositions. At the same time, REAOC's attorneys have not agreed to the County taking
19 all of the depositions of the people they identify as witnesses. The parties are meeting and
20 conferring on this, as well as a variety of other discovery disputes.   The conduct by
21 REAOC's counsel has contributed to the delay, because there has been some ambiguity
22 about who counsel purports to represent, and to this date, counsel has not yet confirmed
23 who it represents. (See email from Rachel Slater to Neelam Naidu, dated July 1, 2008,
24 attached as Exhibit B.)

25     13.    I acknowledge that I was present at the Scheduling Conference on behalf of
26 the County and take responsibility for agreeing to the dates in the Scheduling Order. At
27 that time, I believed REAOC's position to be (a) there was no monetary consideration at
28 issue in this case, as REAOC only sought declaratory and injunctive relief; and (b) the

1  parties would collaborate on an agreed upon statement of facts, and the written record, and

2  then schedule cross motions for summary judgment.   These assumptions proved to be

3  inaccurate as:  (a)  REAOC solicited its membership to file claims, and after the

4  Scheduling Conference over 500 individual claims have been filed with the County, with a

5  cumulative prayer of nearly $30 million; and (b)  REAOC engaged in aggressive discovery

6  tactics rather than work on an agreed upon record.[1]

7                                    **CLASS CERTIFICATION**

8         14.     The County's motion to certify the case as a class action will be filed this

9  week, with the hearing set on August 4, 2008.   Given the proliferation of claims, the

10  County seeks an across-the-board adjudication of the issues raised by REAOC, so that

11  affected persons will be bound.

12        15.     After REAOC represented to the Court that it was seeking only declaratory

13  and injunctive relief, I did not anticipate that REAOC would advise its membership to file

14  individual claims, or that the County would otherwise be inundated with hundreds of tort

15  claims brought by retirees on the exact same legal theories as advanced by REAOC.  It is

16  my understanding that the County has received claims almost every day since REAOC

17  first published in its newsletter that its attorneys advised that claims would be

18  "advantageous."   At last count, it was reported to me that as of July 3, 2008:

19    •  519 claims have been filed against the County.

20    •  The claims all reference this lawsuit by name and case number.

21    •  Most of the claims are directly modeled after the form appearing on the web site for

22       REAOC. (*See* www.reaoc.org.)

23    •  Most claims ask for $50,000 in compensatory damages, as well as the premium

24

25  [1]   This is not to suggest that plaintiff's counsel has acted inappropriately or unethically.   They

26  have simply aggressively pursued discovery,  rather than work on an agreed upon record for
   purposes of summary judgment.

27

28

Defendant's Reply Brief and Declaration in Support
of Motion to Amend the Scheduling Order                                    Case No. SACV-07-1301 AG

1        difference paid between 2007 and 2008.

2    •   *The cumulative value of the compensatory damages claimed by REAOC members is*

3       *approximately $28,878,396.76.*

4    •   *The cumulative value of the cost of the premium difference is:  $119,942.51.*

5       16.    I advised opposing counsel of the County's concern about class certification,

6 on or around May 14 and May 22, 2008,  and the parties met and conferred pursuant to

7 Local Rules.  I wrote on June 24, 2008 to advise counsel that the County would file a

8 motion for class certification, to be set for hearing on August 4.

9       17.    The County's class certification motion details the bases for the Court to

10 coordinate this action such that all affected parties are bound by the outcome.  Class

11 certification will avoid the possibility of inconsistent judgments in different courts.  To

12 permit the REAOC membership to file claims, and potentially not be bound by the

13 judgment in this lawsuit, will invite a "wait and see" approach as to the outcome.  Thus, if

14 the Court upholds the County's reform efforts, retirees could pursue alternative theories in

15 different courts, thus prejudicing the County.   A coordinated approach, such that all

16 affected parties will be bound, is the most efficient and fair way to adjudicate this lawsuit.

17                                     **DILIGENCE**

18       18.    REAOC's contention that the County has somehow been insufficiently

19 diligent is wrong.

20       19.    According to our records, the County has produced the following:

21             - approximately 7,708 pages on 4/8/08 (initial disclosures);

22             - approximately 14,181 pages on 5/28/08 (made available for production on

23 5/22/08);

24             - approximately 685 pages from the County's consultant and a privilege log

25 on 6/23/08 and 6/27/08 (2,030 pages of documents are subject to privilege);

26             - approximately 520 pages from another County consultant and a privilege

27 log identifying 457 additional pages of documents on 6/30/08

28       20.    As stated, the County is currently locating additional responsive documents,

1    however, not all documents have been discovered. The County is reviewing the following

2    documents to prepare for production to REAOC:

3            - approximately 6,000 pages responsive to REAOC's requests (to be

4    produced Tuesday, July 8, 2008)

5            - approximately 1,000 pages from the County's two consultants, collectively;

6    and

7            - hundreds of emails.

8       21.    In addition to the voluminous written discovery, there have been numerous

9    discovery disputes resulting in lengthy meet and confer periods that are yet unresolved.

10      22.    I believe that REAOC's aggressive litigation tactics have contributed to delay

11    in this case. For example, in May 2008, the County requested that REAOC adhere to the

12    parties' agreement to continue working on a joint record, rather than engage in discovery

13    fights. On or about May 13, 2008, REAOC acknowledged the parties' previous agreement

14    to proceed on stipulated facts, but declined to continue with the agreement claiming that

15    such a process would take too much time.

16      23.    Additionally, in response to the County's initial meet and confer efforts

17    regarding plaintiff's inadequate discovery responses, plaintiff supplemented its

18    interrogatory responses on or around May 16, 2008, after initial responses on April 14,

19    2008. REAOC supplemented them again on June 27, 2008. The County believes that

20    these supplemental responses remain inadequate, and the County is observing the Rule 37

21    procedures before moving to compel.

22      24.    On June 23, 2008, REAOC provided supplemental responses to the County's

23    requests for admission, however, the County believes these additional responses remain

24    incomplete and are not in compliance with FRCP 36. The parties are in the midst of meet

25    and confer efforts in order to resolve the issues.

26      25.    Depositions in this case commenced on June 26, 2008, with REAOC taking

27    the depositions of County witnesses produced pursuant to REAOC's PMK notice. The

28    County has taken the depositions of two REAOC witnesses. REAOC substituted another

1  deponent for a key witness, but would not agree to produce a complete set of the
2  alternate's documents. The County agreed to a delay in order to accommodate the new
3  witness's schedule. Depositions occurred on June 30, July 1 (with REAOC producing 400
4  pages at the deposition); and July 2, 2008. More depositions are being scheduled. REAOC
5  has not yet provided available dates for various deponents, despite a request by the County.
6  REAOC contends that it represents a variety of persons to whom the County has issued
7  document subpoenas, but has not confirmed whether it will accept service on behalf of all
8  of these persons.

9      26.    Plaintiff's counsel did not confirm that they would or would not accept
10  service of process for those witnesses it identified in its Initial Disclosures (served on
11  March 10, 2008), its Responses to Defendant's Interrogatories (served on April 14, 2008)
12  and its Supplemental Disclosures (served on March 17, 2008) until July 1, 2008. The
13  parties were in considerable meet and confer communication to resolve this issue. To date,
14  this issue remains outstanding as to at least five third party witnesses.

15      27.    In connection with its move to provide representation to a variety of
16  witnesses, REAOC objected to the County's document subpoenas, and the parties are still
17  in the process of obtaining documents from REAOC's witnesses.

18      28.    We continue to learn of additional documents, that may be relevant, on a
19  weekly, and almost a daily, basis. Plaintiff has introduced the labor negotiations history as
20  the basis for their claims, therefore, the bargaining records over a lengthy period are being
21  gathered. The bargaining history was not mentioned as a potential source basis for
22  plaintiff's claims until the week of June 29, 2008, when one of REAOC's PMK witnesses
23  testified regarding statements made in connection with labor negotiations. Reconstructing
24  the bargaining history poses some unique challenges, in that most of the County's labor
25  relations staff are no longer employed by the County, and it is time consuming to gather
26  and reconstruct the numerous negotiation sessions that could be relevant.

27      29.    This case presents unique complications in that many persons who may have
28  knowledge about the transactions and occurrences at issue are retirees. The County is still

8

1  locating potential witnesses.

2  ### THERE IS NO SIGNIFICANT PREJUDICE THAT
3  ### WILL RESULT FROM ALTERING THE SCHEDULING ORDER

4  30.    I believe that plaintiff's asserted need to have this case quickly adjudicated is

5  exaggerated, and that the REAOC membership will not suffer any significant prejudice in

6  the overall context of this case.   It should be noted that an appeal in this matter means that

7  the case will likely not be finally resolved for at least two years, in any event.   Further,

8  REAOC consciously chose not to seek a preliminary injunction, which is the appropriate

9  procedure in the event a party claims that it will suffer imminent or irreparable harm.

10  31.    REAOC'c contention that it did not seek a preliminary injunction because

11  the County agreed to an expedited discovery and trial schedule does not appear accurate.

12  The time to file for a preliminary injunction would have been before the 2008 rates became

13  effective – i.e., before January 1, 2008.   The parties did not discuss the trial schedule until

14  immediately preceding the Scheduling Conference, which was held on or around February

15  25, 2008.   Again, I understood that the parties would work on an agreed upon record,

16  which has not proved to be accurate.

17  32.    In addition, the specific cost increases to the retirees' health premiums vary

18  significantly among the retirees, depending on individual choices made regarding health

19  plans.   The first "person most knowledgeable" produced by REAOC in response to the

20  County's deposition notice – Gaylan Harris – *testified that his monthly insurance*

21  *premiums are lower in 2008 than what they were in 2007*.   This is because Mr. Harris

22  switched to a lower cost plan made available by the County as part of its reform package.

23  Critically, all of the retirees are permitted to remain insured in one of the County's group

24  health plans.

25  33.    As part of its efforts to mitigate against the cost increases faced by retirees,

26  the County – in extensive consultation with REAOC – researched and negotiated to

27  provide four new health plan opportunities.   Mr. Harris, as well as others, opted to

28  purchase lower cost plans.   The County, through an outreach program to the retirees, spent

9

1  countless hours educating and counseling retirees about health care options.   The County's
2  objective was to ensure that all retirees remained covered by some form of health
3  insurance.

4       34.     Retirees were presented with new, lower cost options, in order to mitigate
5  against the cost increases in 2008.    Some retirees had cost increases as little as $18.16
6  per month, depending on the plan and dependency status.  Some retirees suffered no out of
7  pocket costs, because they were Medicare eligible.   For a host of reasons, therefore, I
8  believe REAOC has exaggerated the economic impacts on the retirees.

9                                    **CONCLUSION**

10      35.     For the reasons stated above, the County requests that this Court:

11      (a)     reset the current discovery date and move it from August 12, 2008 to
12  February 6, 2009 and reset the current trial date from November 2008 to no sooner than
13  June 2009. This will permit the parties a reasonable period to perfect a good record for
14  trial and appellate review, as well as allow for the Court to consider class certification, and
15  to allow for a notice period to retirees in connection with that process;

16      (b)     order the parties to meet and confer on an agreed upon record; and

17      (c)     schedule a mutually convenient date for cross-motions for summary
18  judgment.

19      I declare under penalty of perjury that the foregoing is true and correct and of my
20  own knowledge, except as to those matters I am asserting on information and belief, and as
21  to those matters I believe them to be true.

22  DATED:  July 7, 2008              MEYERS, NAVE, RIBACK, SILVER &
23                                    WILSON
24
25                                    By: /s/ Arthur A. Hartinger
                                          Arthur A. Hartinger
26                                        Attorneys for Defendant
                                          County of Orange
27  1119341.1
28
                                          10

**EXHIBIT A**

G. SCOTT EMBLIDGE, State Bar No. 121613
RACHEL J. SATER, State Bar No. 147976
MICHAEL P. BROWN, State Bar No. 183609
MOSCONE, EMBLIDGE, & QUADRA, LLP
220 Montgomery Street, Suite 2100
San Francisco, California 94104-4238
Telephone:     (415) 362-3599
Facsimile:     (415) 362-2006

Attorneys for Retired Employees Association
of Orange County, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| RETIRED EMPLOYEES ASSOCIATION OF ORANGE COUNTY, INC., <br><br> Plaintiff, <br><br> vs. <br><br> COUNTY OF ORANGE, <br><br> Defendant. | Case No. SACV-07-1301 AG (MLgX) <br><br> **PLAINTIFF REAOC'S RESPONSES TO DEFENDANT'S INTERROGATORIES, SET ONE** |

PROPOUNDING PARTY:    Defendant County of Orange

RESPONDING PARTY:     Plaintiff Retired Employees Association of Orange County

SET NO.:              One

PLAINTIFF REAOC'S RESPONSES TO DEFENDANT'S INTERROGATORIES, SET ONE

1   In responding to any interrogatory, Plaintiff does not concede the relevance or materiality

2   of the subject to which the interrogatory refers.  Plaintiff's responses are made subject to, and

3   without waiving, any objections as to the competency, relevance, materiality, privileged nature,

4   or admissibility of any of the responses given, or of the subject matter thereof, in any proceeding

5   in this action.  These responses are made specifically subject to the right to object to any

6   discovery proceeding involving or relating to the subject matter of the interrogatories.

7

8   Plaintiff will conduct a diligent search and make a reasonable inquiry in response to

9   Defendant's interrogatories.  However, discovery has just commenced and additional research

10  and analysis may require amendment or revision of these responses.  Any responses to the

11  following are based on information presently known to Plaintiff and are given without prejudice

12  to Plaintiff's right to provide or introduce at trial evidence of any subsequently discovered

13  information.

14

15  ## GENERAL OBJECTIONS

16  Plaintiff makes the following General Objections, whether or not separately set forth in

17  response to each and every interrogatory propounded in Defendant's Requests.  These General

18  Objections are hereby incorporated into each specific response.  The assertion of the same,

19  similar or additional objections, or partial responses to the individual interrogatories does not

20  waive any of Plaintiff's General Objections.

21  1.   Plaintiff objects to the interrogatories to the extent they seek information and

22  materials that are neither relevant to the subject matter of the pending action nor reasonably

23  calculated to lead to the discovery of information or evidence admissible at trial.

24  2.   Plaintiff objects to the interrogatories to the extent they would require an unduly

25  burdensome search for, and disclosure of, information and materials that are neither relevant to

26  the subject matter of the pending action nor reasonably calculated to lead to the discovery of

27  information or evidence admissible at trial.

28

3.    Plaintiff objects to the interrogatories to the extent that they, or any of them, seek proprietary, confidential or private business information, including information constituting or pertaining to personnel information.

4.    Plaintiff objects to the interrogatories to the extent that they, or any of them, seek privileged information, including, without limitation, information that was developed in anticipation of or in preparation for litigation or that is protected by attorney-client privilege and/or that constitutes attorney work product.

5.    Plaintiff objects generally to the interrogatories to the extent that they are vague, ambiguous, or do not specify the information sought with sufficient particularity.

6.    Plaintiff objects to the interrogatories to the extent that they seek information or documents that are already in the possession, custody, or control of Defendant, are as or more easily obtained by Defendant as by Plaintiff, or are matters of public record.

7.    Plaintiff objects generally to the interrogatories to the extent that they purport to call for identification of documents not within its possession, custody, or control.

8.    Plaintiff objects generally to the time frame specified by the interrogatories to the extent that they are overly broad.

## SPECIFIC OBJECTIONS AND RESPONSES TO SPECIAL INTERROGATORIES

### INTERROGATORY NO. 1:

Explain in detail the exact source of any promise or contract made by the County that forms the basis for any claim made in the Complaint. [For example, if verbal, who said what? If written, specifically identify the document or legislation.]

### RESPONSE TO INTERROGATORY NO. 1:

Plaintiff objects to the interrogatory on the ground that it is overbroad and that the terms "exact source" and "in detail" are vague. Subject to this and other stated objections, Plaintiff responds as follows:  The County's October 1984 resolution adopting a pooled rate structure; each Memorandum of Understanding in effect between the County and its employee organizations between 1985 and 2007; each Personnel and Salary Resolution in effect between 1985 and 2007; each Summary of Benefits in effect between 1985 and 2007; each annual Board

3

1  resolution continuing the pooled rate structure between 1984 and 2007; the County's policy and
2  practice of providing the Subsidy for more than 20 years; statements made by the County to its
3  employees between 1985 and 2007 regarding the pooled rate structure (and the Subsidy that
4  resulted from the pooled rate structure).

5  **INTERROGATORY NO. 2:**

6      Identify and specify the terms of all contracts asserted in the Complaint.

7  **RESPONSE TO INTERROGATORY NO. 2:**

8      Plaintiff objects to this interrogatory on the ground that it is overbroad and oppressive,
9  especially the request to "specify the terms of all contracts asserted in the Complaint." Plaintiff
10  further objects on the ground that the phrase "contracts asserted in the Complaint" is vague and
11  ambiguous. Subject to these and other stated objections, Plaintiff responds as follows: the
12  Complaint asserts, explicitly and by implication, numerous contracts between the County and its
13  employees and retirees, from the period 1985 through 2007, which contracts contained express
14  and implied promises to continue the pooled rate structure and the Subsidy (Pooling Benefit).
15  These contracts include Memoranda of Understanding between the County and its employee
16  organizations, implied-in-fact contracts (the terms of which were partially reflected in Personnel
17  and Salary Resolutions and Summaries of Benefits). Plaintiff cannot reasonably be required to
18  "identify and specify the terms" of all of these contracts, because they comprise thousands of
19  pages and cover a period of more than two decades.

20  **INTERROGATORY NO. 3:**

21      Identify all legislation and other actions taken by the Board of Supervisors that form the
22  basis for any claim asserted in the Complaint. [The answer should include the date and
23  legislation number if known.]

24  **RESPONSE TO INTERROGATORY NO. 3:**

25      Plaintiff objects to this interrogatory on the ground that it is vague and ambiguous,
26  especially with respect to the term "other actions taken by the Board of Supervisors" and the
27  phrase "form the basis for any claim asserted in the Complaint." Subject to this and other stated
28  objections, Plaintiff responds as follows: October 1984 Resolution adopting the pooled rate

4

structure; each and every resolution between 1985 and 2007 that continued in effect the pooled rate structure; each Personnel and Salary Resolution in effect between 1984 and 2007; each Summary of Benefits in effect between 1984 and 2007; each resolution approving Memoranda of Understanding between the County and its employee organizations in effect between 1984 and 2007; the resolutions in 2006 and 2007 that removed the pooled rate structure and the Subsidy and implemented a split pool rate structure.

**INTERROGATORY NO. 4:**

Identify all documents that contain or refer to any answer to any of these interrogatories.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff objects to this interrogatory on the ground that the phrase "contain or refer to" is overbroad, vague and ambiguous. Plaintiff further objects on the ground that this interrogatory is duplicative of other interrogatories.

**INTERROGATORY NO. 5:**

Identify all witnesses that have knowledge of any of the facts provided in response to these interrogatories.

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff objects to this interrogatory on the ground that it is overbroad, unduly burdensome and intended to oppress. Plaintiff further objects on the ground that the information sought is as readily available to the County. Subject to these and other stated objections, Plaintiff responds as follows: The following persons have knowledge of the facts provided in response to these interrogatories: Gaylan Harris; Russ Patton; David Carlaw; Ron Kautz; Pat Brunner; Bob Griffith; Fred Branca; Ed Clarke; Tom Uram; Sue Paul; Tim Marnell; Bert Scott; Keith Concannon; Michael Capezzi; Carl Holmes; John King; all other persons who represented the County, its employee organizations and OCERS in negotiations over terms of MOUs between 1984 and 2007 and terms of agreements related to the funding of the 1993 retiree medical grant benefit.

**INTERROGATORY NO. 6:**

Specifying the witness, explain specifically the knowledge you believe that witness possesses relative to your response to Interrogatory No. 5.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiff objects on the basis that this interrogatory is overbroad, premature and intended to oppress and harass, and calls for information as readily available to the County.

**INTERROGATORY NO. 7:**

Identify all documents that refer or contain any reference to the County's "Pooling Benefit" as referenced in the Complaint.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff objects to this interrogatory on the ground that it is overbroad and oppressive and is vague as to the phrase "refer or contain any reference to." Subject to this and other stated objections, Plaintiff responds as follows: The County's October 1984 resolution adopting a pooled rate structure; each Memorandum of Understanding in effect between the County and its employee organizations between 1985 and 2007; each Personnel and Salary Resolution in effect between 1985 and 2007; each Summary of Benefits in effect between 1985 and 2007; each annual Board resolution continuing the pooled rate structure between 1984 and 2007; transcripts of Board of Supervisors' meetings from 2005 to 2007 regarding the County's proposal to split the pool; presentations made to the Board at such meetings, including a June 2006 presentation regarding alternative proposals to address a purported financial crisis with respect to retirement health benefits; other studies commissioned by the County regarding retirement health benefits, including reports prepared by Mercer Consultants.

**INTERROGATORY NO. 8:**

State the date and time when any bargaining occurred, and identify all witnesses present during all "bargaining," for retiree medical benefits.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff objects to this interrogatory on the ground that it is overbroad and oppressive— the interrogatory contains no date limitation whatsoever. Plaintiff further objects on the ground

6

1  that the term "bargaining" is vague and ambiguous.  Subject to these and other stated objections,

2  Plaintiff responds as follows:  Between 1984 and 2007 retiree medical benefits were the subject

3  of bargaining between the County and its employee organizations each and every time that the

4  parties engaged in bargaining regarding terms and conditions of employment.  Plaintiff cannot

5  reasonably be required to identify each person involved in those bargaining sessions over a 22-

6  year period, and such information is in the County's possession in any event.

7  **INTERROGATORY NO. 9:**

8  　　　For every promise made by the County relative to retiree medical benefits, state the exact

9  promise made, including the words used, the date and witnesses to the promise.

10 **RESPONSE TO INTERROGATORY NO. 9:**

11 　　　Plaintiff objects to this interrogatory on the ground that it is overbroad and oppressive.

12 Plaintiff further objects on the ground that the term "promise" is vague and ambiguous.  Subject

13 to this and other stated objections, Plaintiff responds as follows:  Every Memorandum of

14 Understanding between the County and its employee organizations that was in force between

15 1985 and 2007 included implicit promises to allow employees to participate in County-sponsored

16 health insurance plans after they retired, at premium rates that were subsidized by virtue of the

17 pooled rate structure; every Personnel and Salary Resolution and Summary of Benefits in effect

18 between 1985 and 2007 contained the same implicit promises; every Memorandum of

19 Understanding, Personnel and Salary Resolution and Summary of Benefits in effect from 1993 to

20 2007 contained promises to provide employees with the monthly grant benefit (and related

21 benefits reflected in the grant program) upon their retirement; verbal promises made by the

22 County to individual employees regarding the Subsidy.

23 **INTERROGATORY NO. 10:**

24 　　　Please fully explain all bases for your claim that the County has promised or contracted

25 to maintain a "Pooling Benefit" relative to retiree medical benefits.

26 **RESPONSE TO INTERROGATORY NO. 10:**

27 　　　Plaintiff objects to this interrogatory on the ground that it is overbroad, and vague as to

28 the phrase "fully explain."  Subject to these and other stated objections, Plaintiff responds as

7

1   follows:  the County's practice of providing the Subsidy from 1985 through 2007 became an

2   implicit promise to continue to provide the Subsidy, at least as to those employees who retired

3   before the Subsidy was removed.  Further, the County is estopped from removing the Subsidy as

4   to employees and retirees who relied on the implied promise of providing the Subsidy when they

5   made decisions regarding retirement and medical insurance coverage.

6   **INTERROGATORY NO. 11:**

7        Identify the health insurance premium rates that were promised to County Retirees, as

8   alleged in paragraph 2 of the Complaint.

9   **RESPONSE TO INTERROGATORY NO. 11:**

10       Plaintiff responds as follows:  the County promised County Retirees that they would be

11  entitled to health insurance benefits at premium rates that reflected the pooled rate structure, that

12  is, at premium rates that reflected the Subsidy.

13  **INTERROGATORY NO. 12:**

14       State all facts that support the claims made in the first cause of action of the Complaint.

15  **RESPONSE TO INTERROGATORY NO. 12:**

16       Plaintiff objects to this interrogatory on the ground that it is overbroad and oppressive.

17  Subject to this and other stated objections, Plaintiff will provide the principal facts on which this

18  cause of action is premised:  The County implemented a pooled rate structure for medical

19  insurance premiums in 1985, which structure resulted in the County and active employees

20  subsidizing retiree insurance premiums from 1985 through 2007.  The practice of pooling and

21  providing this subsidy became an implied promise to continue to do and to provide the same, at

22  least with respect to retirees who retired before the County "split the pool" in 2008.  County

23  employees relied on the promise to provide the subsidy when they made important decisions

24  regarding employment and insurance coverage, and the County knew about such reliance.  The

25  County breached its promise when it unilaterally removed the Subsidy in January 2008.

26  **INTERROGATORY NO. 13:**

27       State all facts that support the claims made in the second cause of action of the

28  Complaint.

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff objects to this interrogatory on the ground that it is overbroad and oppressive. Plaintiff objects to this interrogatory on the ground that it is overbroad and oppressive. Subject to this and other stated objections, Plaintiff will provide the principal facts on which this cause of action is premised: The County implemented a pooled rate structure for medical insurance premiums in 1985, which structure resulted in the County and active employees subsidizing retiree insurance premiums from 1985 through 2007. The practice of pooling and providing this subsidy became an implied promise to continue to provide the same, at least with respect to retirees who retired before the County "split the pool" in 2008. County employees relied on the promise to provide the subsidy when they made important decisions regarding employment and insurance coverage, and the County knew about such reliance.

**INTERROGATORY NO. 14:**

State all facts that support the claims made in the third cause of action of the Complaint.

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiff objects to this interrogatory on the ground that it is overbroad and oppressive. Plaintiff objects to this interrogatory on the ground that it is overbroad and oppressive. Subject to this and other stated objections, Plaintiff will provide the principal facts on which this cause of action is premised: The County implemented a pooled rate structure for medical insurance premiums in 1985, which structure resulted in the County and active employees subsidizing retiree insurance premiums from 1985 through 2007. The practice of pooling and providing this subsidy became an implied promise to continue to provide the same, at least with respect to retirees who retired before the County "split the pool" in 2008. County employees relied on the promise to provide the subsidy when they made important decisions regarding employment and insurance coverage, and the County knew about such reliance. County Retirees had a property right in the Subsidy, and the County removed that property without due process when it unilaterally removed the Subsidy in January 2008.

**INTERROGATORY NO. 15:**

State all facts that support the claims made in the fourth cause of action of the Complaint.

9

1  **RESPONSE TO INTERROGATORY NO. 15:**

2         Plaintiff objects to this interrogatory on the ground that it is overbroad and oppressive.

3  Plaintiff objects to this interrogatory on the ground that it is overbroad and oppressive.  Subject

4  to this and other stated objections, Plaintiff will provide the principal facts on which this cause of

5  action is premised: The County implemented a pooled rate structure for medical insurance

6  premiums in 1985, which structure resulted in the County subsidizing retiree insurance

7  premiums from 1985 through 2007.  The practice of pooling and providing this subsidy became

8  an implied promise to continue to do and to provide the same, at least with respect to retirees

9  who retired before the County "split the pool" in 2008.  County employees relied on the promise

10  to provide the subsidy when they made important decisions regarding employment and insurance

11  coverage, and the County knew about such reliance.  County Retirees had a property right in the

12  Subsidy, and the County removed that property without due process when it unilaterally removed

13  the Subsidy in January 2008.

14  **INTERROGATORY NO. 16:**

15         State all facts that support the claims made in the fifth cause of action of the Complaint.

16  **RESPONSE TO INTERROGATORY NO. 16:**

17         Plaintiff objects to this interrogatory on the ground that it is overbroad and oppressive.

18  Plaintiff objects to this interrogatory on the ground that it is overbroad and oppressive.  Subject

19  to this and other stated objections, Plaintiff will provide the principal facts on which this cause of

20  action is premised:  The County implemented a pooled rate structure for medical insurance

21  premiums in 1985, which structure resulted in the County subsidizing retiree insurance

22  premiums from 1985 through 2007.  The practice of pooling and providing this subsidy became

23  an implied promise to continue to provide the same, at least with respect to retirees who retired

24  before the County "split the pool" in 2008.  County employees relied on the promise to provide

25  the subsidy when they made important decisions regarding employment and insurance coverage,

26  and the County knew about such reliance.  County Retirees had a contract right to the Subsidy,

27  and the County interfered with that right when it unilaterally withdrew the Subsidy in January

28  2008.

PLAINTIFF REAOC'S RESPONSES TO DEFENDANT'S INTERROGATORIES, SET ONE

**INTERROGATORY NO. 17:**

State all facts that support the claims made in the sixth cause of action of the Complaint.

**RESPONSE TO INTERROGATORY NO. 17:**

Plaintiff objects to this interrogatory on the ground that it is overbroad and oppressive. Plaintiff objects to this interrogatory on the ground that it is overbroad and oppressive. Subject to this and other stated objections, Plaintiff will provide the principal facts on which this cause of action is premised: The County implemented a pooled rate structure for medical insurance premiums in 1985, which structure resulted in the County subsidizing retiree insurance premiums from 1985 through 2007. The practice of pooling and providing this subsidy became an implied promise to continue to do and to provide the same, at least with respect to retirees who retired before the County "split the pool" in 2008. County employees relied on the promise to provide the subsidy when they made important decisions regarding employment and insurance coverage, and the County knew about such reliance. County Retirees had a contract right to the Subsidy, and the County interfered with that right when it unilaterally withdrew the Subsidy in January 2008.

**INTERROGATORY NO. 18:**

For every answer to the accompanying requests for admission which is anything other than an unqualified admission, please state all facts the support the denial or other answer.

**RESPONSE TO INTERROGATORY NO. 18:**

Plaintiff incorporates its objections to each request for admission referred to in this interrogatory. Plaintiff further objects on the basis that this interrogatory is overbroad by asking for "all facts"; Plaintiff will limit its answers to principal facts that support its responses. Plaintiff further objects on the basis that this interrogatory causes this set of interrogatories to exceed the 25-interrogatory limit, because this interrogatory must be counted as containing as many sub-parts as there are corresponding requests for admission. Accordingly, Plaintiff will respond to this interrogatory with respect to the first *eight* requests for admission to which Plaintiff responded with something other than an unqualified admission. Plaintiff will not respond to this interrogatory with respect to the remaining requests for admission.

No. 18(a):

**REQUEST FOR ADMISSION NO. 1:**

Admit that every year since at least 1966 the County has approved health premium rates.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Plaintiff objects to this request on the ground that the phrase "at least 1966" is vague and ambiguous, as is the word "approved" and the term "health premium rates." Subject to this and other stated objections, Plaintiff responds as follows: Plaintiff lacks sufficient information at this time to provide an admission or a denial.

**RESPONSE TO INTERROGATORY NO. 18(a):**

Plaintiff is unable to respond to this request because the terms "approved" and "health premium rates" are vague in this context. Further, the phrase "at least 1966" renders the request vague.

No. 18(b):

**REQUEST FOR ADMISSION NO. 2:**

The County has never promised that health premium rates would be set in any particular way for a period of greater than 12 months.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Plaintiff objects to this request on the ground that it is vague and ambiguous. Subject to this and other stated objections, Plaintiff responds as follows: DENIED.

**RESPONSE TO INTERROGATORY NO. 18(b):**

Plaintiff contends that the County did in fact promise to continue to use a pooled rate structure to determine health insurance premiums for retirees, at least with respect to those retirees who retired before the County "split the pool" in 2008.

No. 18(c):

**REQUEST FOR ADMISSION NO. 3:**

PLAINTIFF REAOC'S RESPONSES TO DEFENDANT'S INTERROGATORIES, SET ONE

There is no written contract or promise that supports any of the claims in the Complaint.

## RESPONSE TO REQUEST FOR ADMISSION NO. 3:

Plaintiff objects to this request on the ground that it is vague, ambiguous and overbroad. Subject to this and other stated objections, Plaintiff responds as follows: DENIED

## RESPONSE TO INTERROGATORY NO. 18(c):

Plaintiff contends that a number of writings support its claims, including memoranda of understanding between the County and its employee organizations; summaries of benefits; and personnel and salary resolutions.

No. 18(d):

## REQUEST FOR ADMISSION NO. 4:

No one in the County every promised to any employee or retiree that health premium rates would be set in any particular way for a period of greater than twelve months.

## RESPONSE TO REQUEST FOR ADMISSION NO. 4:

Plaintiff objects to this request on the ground that it is vague and ambiguous, especially with regard to the phrase "for a period of greater than twelve months." Subject to this and other stated objections, Plaintiff responds as follows: DENIED.

## RESPONSE TO INTERROGATORY NO. 18(d):

Plaintiff contends that the County did in fact promise to continue to use a pooled rate structure to determine health insurance premiums for retirees, at least with respect to those retirees who retired before the County "split the pool" in 2008.

No. 18(e):

## REQUEST FOR ADMISSION NO. 5:

There are no documents that contain or refer to a promise to set health premiums in any particular way.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Plaintiff objects to this request on the ground that it is vague and ambiguous, especially with respect to the phrase "contain or refer to." Subject to this and other stated objections, Plaintiff responds as follows: DENIED.

**RESPONSE TO INTERROGATORY NO. 18(e):**

Plaintiff contends that a number of writings contain or reflect the County's promise to continue setting premium rates based on the pooled rate structure, including memoranda of understanding between the County and its employee organizations; summaries of benefits; personnel and salary resolutions; County documents and verbal statements of County representatives referring to the pooled rate structure and the Subsidy.

No. 18(f):

**REQUEST FOR ADMISSION NO. 6:**

There are no documents that contain or refer to any agreement or understanding that health premiums would be set in any particular fashion beyond a 12 month period.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Plaintiff objects to this request on the ground that it is vague and ambiguous, especially as to the phrases "contain or refer to," "any particular fashion" and "beyond a 12 month period." Subject to this and other stated objections, Plaintiff responds as follows: DENIED.

**RESPONSE TO INTERROGATORY NO. 18(f):**

Plaintiff contends that a number of writings contain or reflect the County's promise to continue setting premium rates based on the pooled rate structure, including memoranda of understanding between the County and its employee organizations; summaries of benefits; personnel and salary resolutions; County documents and verbal statements of County representatives referring to the pooled rate structure and the Subsidy.

14

No. 18(g):

### REQUEST FOR ADMISSION NO. 7:

There are no labor memoranda of understanding that contain a promise to set health premium rates in any particular fashion beyond a 12 month period.

### RESPONSE TO REQUEST FOR ADMISSION NO. 7:

Plaintiff objects to this request on the ground that it is vague and ambiguous, especially with respect to the word "contain." Subject to this and other stated objections, Plaintiff responds as follows: DENIED.

### RESPONSE TO INTERROGATORY NO. 18(f):

Plaintiff contends that memoranda of understanding in effect between 1985 and 2007 (the period in which the pooled rate structure was in effect) contained an implied promise to provide the Subsidy to employees upon their retirement by continuing to set health insurance premium rates based on the pooled rate structure.

No. 18(h):

### REQUEST FOR ADMISSION NO. 8:

The operative retiree medical plan in the County is the plan adopted by the County, in Resolution No. 07-090.

### RESPONSE TO REQUEST FOR ADMISSION NO. 8:

Plaintiff objects to this request on the ground that it is vague and ambiguous, especially with respect to the phrase "operative retiree medical plan." Subject to this and other stated objections, Plaintiff responds as follows: DENIED.

### RESPONSE TO INTERROGATORY NO. 18(g):

Plaintiff is unable to discern the meaning of the term "operative retiree medical plan"—the phrase could refer to the plan that is currently "operative" (that is, in effect since January 2008), or the plan(s) that are "operative" for purposes of Plaintiff's claims (that is, the plan(s) in effect from 1985-2007).

PLAINTIFF REAOC'S RESPONSES TO DEFENDANT'S INTERROGATORIES, SET ONE

**INTERROGATORY NO. 19:**

State the name, address and telephone number of every officer in REAOC in the last five years, indicating the positions held.

**RESPONSE TO INTERROGATORY NO. 19:**

Plaintiff objects on the ground that this set of interrogatories exceeds the 25-interrogatory limit and Plaintiff has answered the first 25 interrogatories.

**INTERROGATORY NO. 20:**

For every contract or promise PLAINTIFF contends was made regarding retiree medical benefits, state the date (and identify the legislation or other formal action taken) of any action taken by the Board of Supervisors to approve the contract or promise.

**RESPONSE TO INTERROGATORY NO. 20:**

Plaintiff objects on the ground that this set of interrogatories exceeds the 25-interrogatory limit and Plaintiff has answered the first 25 interrogatories.

**INTERROGATORY NO. 21:**

Articulate specifically what injunctive relief PLAINTIFF seeks, given that the rates have already gone into effect on January 1, 2008, and explain all bases for such relief.

**RESPONSE TO INTERROGATORY NO. 21:**

Plaintiff objects on the ground that this set of interrogatories exceeds the 25-interrogatory limit and Plaintiff has answered the first 25 interrogatories.

Dated:  April 14, 2008                    MOSCONE, EMBLIDGE & QUADRA, LLP


By:_____
                              G. Scott Emblidge
                              Rachel J. Sater
                              Michael P. Brown
                              Attorneys for Plaintiff

PLAINTIFF REAOC'S RESPONSES TO DEFENDANT'S INTERROGATORIES, SET ONE

1  G. SCOTT EMBLIDGE, State Bar No. 121613
   RACHEL J. SATER, State Bar No. 147976
2  MICHAEL P. BROWN, State Bar No. 183609
   MOSCONE, EMBLIDGE, & QUADRA, LLP
3  220 Montgomery Street, Suite 2100
   San Francisco, California 94104-4238
4  Telephone:    (415) 362-3599
   Facsimile:    (415) 362-2006
5
6  Attorneys for Retired Employees Association
   of Orange County, Inc.
7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  SOUTHERN DIVISION

11

12  RETIRED EMPLOYEES ASSOCIATION      Case No. SACV-07-1301 AG (MLGx)
    OF ORANGE COUNTY, INC.,
13                                     **PROOF OF SERVICE**
             Plaintiff,
14
15       vs.
16  COUNTY OF ORANGE,
17           Defendant.
18

19

20  I, Omar Lateef, declare as follows:

21       I am a citizen of the United States, over the age of eighteen years and not a party to the
    within entitled action.

22       On April 14, 2008, I served the attached:

23

24  • **PLAINTIFF REAOC'S RESPONSES TO DEFENDANT'S REQUESTS FOR
       PRODUCTION OF DOCUMENTS, SET ONE**

25  • **PLAINTIFF REAOC'S RESPONSES TO DEFENDANT'S REQUEST FOR
       ADMISSIONS, SET ONE**

26
27  • **PLAINTIFF REAOC'S RESPONSES TO DEFENDANT'S
       INTERROGATORIES, SET ONE**

28

                              1

PROOF OF SERVICE                        Case No. SACV-07-1301 AG (MLG

on the interested party(ies) named below:

Anthony J. Bejarano
Arthur Hartinger
Edward L. Kreisberg
Margaret Rosequist
Meyers Nave Riback Silver & Wilson LLP
555 12th Street, Suite 1500

Oakland, CA 94607

I served the attached document(s) in the manner indicated below:

☒   **BY PERSONAL SERVICE:**  I caused true and correct copies of the above documents to be placed and sealed in envelope(s) addressed to the addressee(s) and I caused such envelope(s) to be delivered by hand on the office(s) of the addressee(s).

and on the interested party(ies) named below in the manner indicated below:

Benjamin P. De Mayo
Teri L. Maksoudian
Orange County Counsels Office
333 West Santa Ana Blvd., Suite 407
P.O. Box 1379
Santa Ana, CA 92702

☒   **BY MAIL:**  I caused true and correct copy(ies) of the above documents to be placed and sealed in envelope(s) addressed to the addressee(s) named above and, following ordinary business practices, placed said envelope(s) at the Law Offices of Moscone, Emblidge & Quadra, LLP, 220 Montgomery, Ste. 2100, San Francisco, California, 94104, for collection and mailing with the United States Postal Service and there is delivery by the United States Post Office at said address(es).  In the ordinary course of business, correspondence placed for collection on a particular day is deposited with the United States Postal Service that same day.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed April 14, 2008, at San Francisco, California.

Omar Lateef

PROOF OF SERVICE                                  Case No. SACV-07-1301 AG (MLGx)

**EXHIBIT B**

**Thomas, Kathy**

| | |
|---|---|
| **From:** | Rachel Sater [sater@meqlaw.com] |
| **Sent:** | Tuesday, July 01, 2008 1:40 PM |
| **To:** | Naidu, Neelam |
| **Cc:** | brown@meqlaw.com |
| **Subject:** | RE: REAOC v. County of Orange (Service of Process) |

Neelam,

This confirms that MEQ will accept service of process for Fred Branca, Patrick Brunner, Margie Cabrera, Lavronne Campbell, Sue Coder, Diane Corovlis, Cristina Fitzgerald, Bob Griffith, Bonnie Mowrey, Byron Nelson, Dolores Oravecz, Thomas Spencer, David Carlaw, Ed Clarke, Gaylan Harris, Ron Kautz, Russell Patton, Linda Robinson, and Bert Scott. I do not know if we are authorized to accept service of process for Tom Uram and Brad Gates, so I cannot confirm that at this time. Michael Brown is in deposition and can confirm that later if that is necessary.

We are not currently authorized to accept service for Sandra Botello, Michael Capezzi, Robin Craycroft, George Murphy, and Sue Paul. We will need to check with them and get back to you.

Rachel


Rachel J. Sater- Moscone, Emblidge & Quadra, LLP - 220 Montgomery Street, Suite 2100  San Francisco, CA  94104| P: 415-362-3599| F. 415-362-2006
sater@meqlaw.com   www.meqlaw.com




-----Original Message-----
From: Naidu, Neelam [mailto:nnaidu@meyersnave.com]
Sent: Tuesday, July 01, 2008 11:33 AM
To: sater@meqlaw.com
Cc: brown@meqlaw.com; Hartinger, Art
Subject: RE: REAOC v. County of Orange (Service of Process)

Just so we are clear, can you confirm that you are referring to Moscone, Emblidge & Quadra (MEQ) accepting service of process for: Fred Branca, Patrick Brunner, Margie Cabrera, Lavronne Campbell, Sue Coder, Diane Corovlis, Cristina Fitzgerald, Bob Griffith, Bonnie Mowrey, Byron Nelson, Dolores Oravecz, and Thomas Spencer?

Can you confirm that MEQ will accept service of process for Doug Storm?

What about the other nonparty witnesses that you have identified -- so will MEQ be accepting service for: Sandra Botello, Michael Capezzi, Robin Craycroft, George Murphy, and Sue Paul?

We understand that MEQ has already agreed to accept service of process for: David Carlaw, Ed Clarke, Brad Gates, Gaylan Harris, Ron Kautz, Russell Patton, Linda Robinson, Bert Scott, and Tom Uram.

Sincerely,

Neelam Naidu
Attorney at Law

1

MEYERS NAVE
555 12th Street, Suite 1500
Oakland, CA 94607
Phone: 510.808.2000
Fax: 510.444.1108
nnaidu@meyersnave.com
www.meyersnave.com


-----Original Message-----
From: Rachel Sater [mailto:sater@meqlaw.com]
Sent: Tuesday, July 01, 2008 11:13 AM
To: Naidu, Neelam
Cc: brown@meqlaw.com
Subject: REAOC v. County of Orange


Neelam,

All the non-party witnesses you served with document subpoenas on or around May 30th have
authorized this firm to accept service of process on their behalf.

Thank you,

Rachel

Rachel J. Sater- Moscone, Emblidge & Quadra, LLP -  220 Montgomery Street, Suite 2100  San
Francisco, CA  94104│ P: 415-362-3599│ F.
415-362-2006
sater@meqlaw.com    www.meqlaw.com